UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CAUSE NO. 5:26-4877 |
| ALAN STALCUP, | § § § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Federal National Mortgage Association ("*Fannie Mae*" or "*Plaintiff*") sues Defendant Alan Stalcup (the "*Guarantor*" or "*Defendant*"). In support of this Complaint, Fannie Mae would respectfully show the Court as follows:

## NATURE OF THE DISPUTE

1.      Plaintiff brings this action to recover amounts it is owed pursuant to the Guaranty further defined below, executed by Guarantor regarding a loan relating to a certain Promissory Note further defined below.

2.      Guarantor is personally liable for all amounts due and owing under the Guaranty. Plaintiff brings this action to recover the amounts it is owed, in addition to the attorneys' fees and costs to which it is contractually entitled.

## THE PARTIES

3.      Plaintiff Fannie Mae is a corporation organized and existing under the laws of the United States.  Fannie Mae maintains its principal office in Washington, D.C. and is a citizen of the District of Columbia for purposes of jurisdiction and venue. 12 U.S.C. § 1717(a)(2)(B).

4.     Upon information and belief, Defendant Alan Stalcup is an individual residing at 3613 Murillo Circle, Austin, Texas 78703 and can be served with process there, or wherever else he might be found.

## DIVERSITY JURISDICTION

5.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the amount in controversy (no less than $6,632,183.22 as of the October 7, 2025 foreclosure described herein) exceeds the minimum jurisdictional limits of this Court and Plaintiff and Defendant are citizens of different states.

6.     Plaintiff is deemed to be a citizen of the District of Columbia for purposes of jurisdiction.  12 U.S.C. § 1717(a)(2)(B).

7.     Defendant Alan Stalcup is a resident and citizen of Texas.

## VENUE

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

9.     The loan documents at issue also contain a consent to jurisdiction and venue in this District.

## STATEMENT OF FACTS

### A.  Loan Documents

10.     Fannie Mae is the owner and holder of all documents relating to the Loan, defined below, pursuant to that certain Assignment of Collateral Agreements and Other Loan Documents executed by CBRE Multifamily Capital, Inc., a Delaware corporation (the "*Original Lender*") for the benefit of Fannie Mae on May 24, 2023 (the "*Assignment*"), including:

    i.     That certain Multifamily Note dated May 24, 2023,  payable to the order of the Original Lender (the "*Note*"), in the original stated principal amount of Thirty

- 2 -

Million Five Hundred Forty-Nine Thousand and 00/100 Dollars ($30,549,000.00) (the "***Loan***").

ii. That certain Multifamily Loan and Security Agreement dated May 24, 2023, by and between 3501 Pin Oak Drive LLC (the "***Borrower***") and the Original Lender (the "***Loan Agreement***");

iii. That certain Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated May 24, 2023 (the "***Deed of Trust***"), granting a first lien on the real and personal property known as "Barcelo Apartment Homes" which is located at 3501 Pin Oak Drive, San Antonio, Texas 78229 (the "***Property***");

iv. That certain Guaranty of Non-Recourse Obligations dated May 24, 2023 executed by Guarantor for the benefit of the Original Lender (the "***Guaranty***"); and

v. All other documents, certificates, instruments and agreements executed by the Borrower or Guarantor or others in connection with the Loan or to otherwise evidence or secure the Loan, and all renewals, supplements, or amendments thereto.

11. All the foregoing documents are collectively referred to as the "***Loan Documents***".

All capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Agreement.

12. The Guaranty was executed by Guarantor in connection with, and as a condition of, the Original Lender entering into the Loan Documents, and as a condition of Fannie Mae agreeing to the assignment of those Loan Documents.

## B. The Defaults

13. Borrower failed to comply with its obligations under the Loan Documents, including (i) failing to timely pay all amounts due and owing under the Loan Documents, (ii) allowing mechanics' liens to be filed against the Property, and (iii) failing to keep the Property in good repair.

i. *Borrower failed to pay amounts due and allowed mechanics' liens to be filed against the Property.*

14.     Beginning in April 2025, Borrower failed to make its monthly debt service payment on its Loan.

15.     Additionally, in violation of the Loan Documents, Borrower failed to pay numerous vendors, resulting in the filing of liens against the Property totaling no less than $196,244.85 as shown below:

| Date | Claimant | Instrument Number | Type | Amount |
|---|---|---|---|---|
| 4/15/2024 | MV Home Services LLC | 20240065966 | M&M Lien | $  10,407.81 |
| 5/14/2024 | Dixie Carpet Installations, Inc. | 20240086118 | M&M Lien | $  22,186.41 |
| 5/14/2024 | Munoz Soria | 20240085994 | M&M Lien | $  35,191.49 |
| 8/5/2024 | GLOBAL: Multi-Family Construction Renovations | 20240141712 | M&M Lien | $   8,202.80 |
| 10/25/2024 | Roto-Rooter Services Company | 20240196976 | M&M Lien | $  42,205.84 |
| 1/29/2025 | Arise Restoration | 20250015405 | M&M Lien | $  11,070.50 |
| 2/14/2025 | Robles Cleaning Services | 20250026823 | M&M Lien | $  66,980.00 |
|  |  |  |  |  |
|  |  |  | **Total:** | **$  196,244.85** |

16.     Borrower's failure to obtain Fannie Mae's consent prior to the filing of the aforementioned liens is an Event of Default pursuant to Section 14.01(a)(6) of the Loan Agreement.

17.     By way of written correspondence dated June 6, 2025 (the "***Notice of Acceleration***"), Borrower was notified of the numerous Events of Default and that the Loan had been accelerated.

> ii.     *Borrower failed to maintain and repair the Property.*

18.     Following the Notice of Acceleration, Fannie Mae learned that the Borrower failed to maintain and repair the Property in a reasonable manner, causing the Property to fall into significant disrepair.  This has resulted in waste to the Property under Section 3.02(a)(6) of the Loan Agreement by diminishing and impairing the value and marketability of the Property, which provides Fannie Mae's only security for the Loan.

- 5 -

19.   A Property Condition Assessment was performed on June 10, 2025.  It identified that the Property needed $3,056,290.00 in immediate repairs, including to address the following problems:

- There were active sanitary leaks outside several residential buildings.



- Ceiling air conditioning units showed signs of leaking condensate pans.  Maintenance confirmed that there were frequent condensate pan leaks.



- General lack of maintenance was observed throughout the Property's exteriors.  Access panels were missing, there was extensive wood rot at trim and fascia, and cement fiber

- 6 -

siding was damaged.  Windows at the leasing office had been replaced with plexiglass following vandalism.



- There was damage to the balconies of residential units, including improper and rotten framing.  There was also extensive cracking of the concrete decking and improperly secured railings.



- The flat roof coverings of different buildings were observed to be deteriorating and had signs of patching and debris accumulation.



- Pedestrian walkways had undergone improper repairs, resulting in deteriorated, heaved, settled, and cracked conditions.



- Trash and debris were littered throughout the Property.

 

- 8 -

- There was an active freshwater leak near the leasing office.  Management reported that the leak had recently been repaired, but the on-going condition indicated that any repair had been incomplete or failed.



- The interior surfaces of both outdoor pools were not visible due to the dark green hue of the water.  There was nonfunctioning pool equipment, and both pools also had damaged water line tiles.



- Tenants reported that they lacked hot water for extended periods of time.  Five of the Property's seven water heaters and the central gas boiler were down 75 percent of the time,

causing this shortage.  Three of the boiler rooms were observed to have mold and damaged finishes.

 

- There were 66 down units that were unavailable for occupancy.  These units require significant rehabilitation work before they can be in a habitable condition due to suspected mold, missing and damaged drywall, damaged sanitary piping, graffiti, and other structural and engineering damage.  Some of this damage was the result of tenant abuse, vagrant occupation, and vandalism.

 

 

- Two of the central laundry rooms were unavailable for tenant use.  They lacked any laundry equipment and had damaged finishes.

 

- The Property had barren landscaping, the result of a non-functioning irrigation system.

 

- Trees had been planted too close to buildings and had not been routinely trimmed, resulting in the root structures growing too close to building foundations and the tree limbs being in contact with building exteriors.

 

- Fire extinguishers were expired.



20.     The Property Condition Assessment ultimately found that the Property was in "declining" condition and that its problems were the result of poor maintenance and lack of routine maintenance.  At the time of the inspection, the Property's management reported that there was no

on-site maintenance staff and the property manager was not in a full-time position. Vagrants were also observed throughout the Property and living in both down and vacant units.

### C. The Receivership and Foreclosure

21.     On July 16, 2025, in a separate action, Judge Norma Gonzalez granted *Fannie Mae's Application for Appointment of Receiver* over the Property.  *Federal National Mortgage Association v. 3501 Pin Oak Drive LLC*, Cause No. 2025-CI-15487, in the 285th District Court of Bexar County, Texas (the "**Receivership Action**").  Per Judge Gonzalez's Order, Sal Thomas of Tarantino Properties was named receiver (the "**Receiver**").

22.     At the time of Receiver's takeover, the occupancy rate of the Property was just 13 percent.  There were no onsite employees for the Property.  There were multiple pending code compliance violations, dating back to March 2025.  Borrower did not provide any operating or security deposit funds to Receiver during the course of the receivership.  *Receiver's First Report*, Receivership Action (Oct. 10, 2025).

23.     Fannie Mae foreclosed on the Property on October 7, 2025.  As of the foreclosure date, the total debt was no less than $33,160,916.12.  The Property sold for $26,528,732.90. Accordingly, a deficiency of no less than $6,632,183.22 remains.

### D. The Guaranty

24.     The Guaranty provides that Guarantor:

"absolutely, unconditionally and irrevocably guarantees to Lender the full and prompt payment and performance when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of:

(a) all amounts, obligations and liabilities owed to Lender under Article 3 (Personal Liability) of the Loan Agreement (including the payment and performance of all indemnity obligations of Borrower described in Section 3.03 (Personal Liability for Indemnity Obligations) of the Loan Agreement and including all of Borrower's obligations under the Environmental Indemnity Agreement); and

(b) all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty."

Guaranty at ¶ 3.

25.    Section 3.02(a) of the Loan Agreement provides that "Borrower shall be personally liable to Lender for the repayment of the portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of … (6) waste or abandonment of the Mortgaged Property …"

26.    Section 3.02(b) of the Loan Agreement provides that "Borrower shall be personally liable to Lender for the repayment of all of the Indebtedness, and the Mortgage Loan shall be fully recourse to Borrower, upon the occurrence of any of the following … a Transfer . . . that is not permitted under this Loan Agreement or any other Loan Document. " A Transfer includes "a granting, pledging, creating or attachment of a lien". Loan Agreement, Schedule 1.

27.    Because Borrower has allowed liens to be attached to the Property and committed waste at the Properties, liability under the Guaranty has been triggered and Guarantor has breached the Guaranty by failing to pay all amounts due thereunder.

28.    The Guaranty explicitly waives all defenses to enforcement, including "the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty." *See* Guaranty at Section 8(a).

## <u>COUNT I</u>

### Breach of Contract: Guaranty

29.    Plaintiff incorporates by reference the allegations set forth in each of the preceding paragraphs as though they were set forth herein.

30.     The Guaranty constitutes a binding contractual relationship between the Guarantor, on one hand, and Plaintiff on the other. Plaintiff has performed all terms and conditions of the Guaranty to be performed by Plaintiff.

31.     The Guarantor's acts and omissions constitute breaches of the Guaranty, including among other reasons, by the occurrence of Borrower's allowing liens to be filed against the Property in violation of the Loan Documents and Borrower's allowing the Property to fall into such significant disrepair that it constituted waste.

32.     Guarantor has no valid defenses or claims of setoff with respect to the obligations under the Guaranty.

33.     As a direct and proximate result of the Guarantor's defaults, Plaintiff has incurred and will incur actual damages in excess of the minimum jurisdictional limits of this Court for which Plaintiff seeks recovery from the Guarantor.

34.     Under the Guaranty, Plaintiff is entitled to money damages from the Guarantor as provided therein.

35.     Under the Guaranty, Plaintiff is entitled to recovery of its attorneys' fees and costs incurred in connection with enforcement of its rights and remedies under the Guaranty.

### Prayer

Wherefore, Fannie Mae prays that Defendant be cited to appear and make answer herein and that Fannie Mae have a judgment against Defendant as follows:

That upon final trial, Fannie Mae be awarded the actual damages incurred by Fannie Mae as a result of Defendant's breaches of the Guaranty, prejudgment and post-judgment interest at the maximum lawful amount, expenses, including attorneys' fees incurred in enforcing Fannie Mae's

- 15 -

contractual rights, costs of court and any such other and further relief, at law or in equity, to which

Fannie Mae may show itself to be justly entitled.

Dated: July 29, 2026                                   **REED SMITH LLP**


By: */s/ Jay L. Krystinik*
  Keith M. Aurzada
  Texas Bar No. 24009880
  Jay L. Krystinik
  Texas Bar No. 24041279
  **REED SMITH LLP**
  2850 N. Harwood St., Ste. 1500
  Dallas, Texas 75201
  T:  469.680.4200
  F:  469.680.4299
  kaurzada@reedsmith.com
  jkrystinik@reedsmith.com

  Megan E. Brown
  Texas Bar No. 24097428
  **REED SMITH LLP**
  1221 McKinney Street, Ste. 2100
  Houston, Texas 77010
  T:  713.469.3800
  megan.brown@reedsmith.com


  **COUNSEL FOR FANNIE MAE**